## Case No. 14,551a.

### UNITED STATES ex rel. BERRARD v. BEARNES et al.

[N. Y. Times, Jan. 20, 1863.]

District Court, S. D. New York. 1862.

ADMIRALTY—ATTACHMENT FOR CONTEMPT.

[A court of admiralty has full power to punish by fine the action of one of the parties in taking a vessel away from the custody of the court without permission.]

This was a proceeding by attachment for contempt of court [by the United States ex rel. Berrard against Henry M. Bearnes and James C. Jewett]. The facts disclosed by the papers were as follows: The relator, by Beebe, Dean and Donohue, as her proctors, filed a libel in this court on May 17, 1862, against the bark Cora and Henry M. Bearnes to recover possession of the vessel, claiming to be owner thereof. Process was issued and the vessel was taken into custody by the marshal. Bearnes appeared in the action by Owen, Gray and Owen as his proctors, and claimed the vessel, and on May 23 made a motion on affidavits to the court, Judge Betts being on the bench, for leave to bond the vessel, which application was opposed on affidavits, and the court on May 29 denied the motion for leave to bond, with costs. Nothing further was done in the cause until June 28, when an application to bond was served on the libelant's proctors by B. F. Dunning, Esq., as proctor. founded upon an affidavit of James C. Jewitt that his firm had previously chartered the vessel for a voyage to China, and that the vessel was then ready for sea. She had been, as it afterward appeared, previous to this date, cleared at the custom house, and Jewett paid the clearance, and charged them to Bearnes. On this application, no affidavits being read in opposition, an order was obtained from the court on July 1, Judge Smalley then being on the bench, allowing the vessel to be bonded on certain conditions, which conditions were never complied with. The libelant had expressly refused, prior to that order, to consent to the bonding of the vessel and the proceedings afterward upon the application for the order and obtaining it from the court, were conducted without her personal consent or knowledge and against her refusal to her proctors to assent to such release of the vessel. The vessel was thereupon taken by her captain to sea out of the custody of the marshal, with the permission if not by the express direction of Bearnes personally. Bearnes well knew that no authority of the court or the marshal or the libelant had been given for such removal. In September following the libelant in that suit becoming aware of these facts applied to the court on affidavits and obtained an attachment against Bearnes for contempt of court in thus removing the vessel from the custody of the court, and an order against Jewett requiring him to show cause why a similar attachment should not issue against him. Bearnes was arrested and brought before the court under the attachment. The proceedings against him resulted in the concession on his part, under the advice of his counsel, that the fact of a technical contempt in intermeddling with and preventing the due course and effect of legal proceedings in the suit had occurred, and it was referred to a commissioner to take such proof as might

be offered in extenuation of his offence. Jewett appeared in answer to the order and showed by affidavit that he had never authorized any appearance in the suit or motion for leave to bond on his behalf, and had made the affidavit on which the application was founded on the request of Bearnes, whom he had been urging to hasten the vessel to sea, and that he had no part in sending the vessel away. The matter then came before the court on affidavits and the evidence reported by the commissioner.

HELD BY THE COURT. That there is no color for the defence that Bearnes was unconscious of the wrongfulness and criminality of his interference with the course of justice, in taking the vessel out of the charge of the officers of the law. That the facts import a fixed purpose of mind in him to deprive the libelant of the protection and rights acquired by the institution of her suit. That the law prevents or redresses, by its most energetic interposition, every wrongful movement of one litigant party tending to counteract the due administration of the law by courts of justice, and which may work to the prejudice of his adversary. The judicatures of all civilized communities guard against mischiefs of that character by strict watchfulness over the conduct of saitors, and by the application of prompt and severe punishment to the parties found guilty of such intermeddling with the course of justice. That the usual method of punishing malconduct of this description is by attachment for contempt. That this act of Bearnes independent of the violation of the provisions of the act of congress (1 Stat. 83) and the inherent authority and powers of the court ([Maryland Ins. Co. v. Woods] 6 Cranch [10 U. S.] 32) was a flagrant contempt under the restricted regulations of the act of March 2, 1831 [4 Stat. 487], in regard to contempts, it being a disobedience and resistance to the writ and command of the court. This offence is punishable by the court at discretion by fine and imprisonment.

The doctrine of the English admiralty accords in the amplest degree authority to the court to vindicate its dignity against contumacious suitors and their abettors, and on proof of the offence to inflict a fine at discretion. Coote, Adm. 2. 18.19; The Petrel, 3 Hagg. Adm. 299. The like remedy obtains in the admiralty courts of the United States (Ben. Prac. 241, 439), and the laws of this state embrace similar regulations in cases of contempts injurious to the rights of parties in civil actions. The mode of carrying on the remedy in the state courts does not necessarily control the action of the federal courts. That the order of reparation should require Bearnes to make provision for a full indemnification against the hazard to which he has exposed the property abstracted by him, and also to compensate the relator measurably for the damages and expenses she has sustained.

THE COURT, therefore, ordered that, because of the offence and wrong committed by Bearnes in this act of contempt against the process of the court and the authority of the law and in violation of the rights and immunities of the relator in the prosecution of her suit, a fine of $500 is imposed upon him, to be paid into court, together with the costs and expenses incurred by the relator in these proceedings, which were taxed at $302.88.

And THE COURT further ordered, as it appeared in the application to Judge Smalley and his order thereon, that the vessel was worth $12,000, and that Bearnes undertook to give security in the sum of $15,000 to redeliver the vessel, that he now deposit in court the sum of $15,000 to abide the decree of the court or give a stipulation in that sum in the cause in which the vessel was arrested with two sureties, to be approved by the court that he will redeliver the bark to the marshal of this district upon the final decree of this court in favor of the libelant in like condition as she was in on July 1, 1862, and that he will pay all damages awarded by the decree. And further ordered that Bearnes stand committed to the custody of the marshal, to remain there charged on said contempt until the fine and costs and expenses are paid and the stipulation given, or the money deposited as above directed. And as it appears that Jewett had never personally interfered in the suit against the Cora, and only insisted that Bearnes should fulfill his charter and dispatch the vessel on her voyage, and though he knew before the departure of the vessel that she was in custody of the law, and was thus prevented from sailing, yet that he personally took no measures to withdraw or remove her illegally from that arrest, the proceedings against him are discharged, but without costs, because there was probable ground to believe that the interference to get the vessel out of port was a concurrent one between him and Bearnes.